IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| GREEN PLAINS INC., | ) | |
| | ) | Case No. 23-cv-00440 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **STIPULATED E-DISCOVERY** |
| | ) | **PROTOCOL** |
| ERIC HAKMILLER, | ) | |
| | ) | |
| Defendant. | ) | |

THIS MATTER is before the Court on the parties' Stipulation and Joint Motion for Entry of Stipulated E-Discovery Protocol.  (Filing No. 32.)  The motion is granted.  Accordingly, the Court enters the following:

## I.   PURPOSE

This Stipulated eDiscovery Protocol ("eDiscovery Protocol") will govern the discovery and use of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules. The failure of this ESI Protocol to address any particular issue is without prejudice to any position that a Party may take on that issue.

## II.   COOPERATION

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter.

## III.   PRESERVATION

The Parties acknowledge that they have a common law obligation to take reasonable and proportional steps to preserve relevant, discoverable information in the Party's possession, custody, or control. With respect to preservation of ESI, the Parties agree as follows:

A.  Absent a showing of good cause by the Requesting Party, the Parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data.

B.  Absent a showing of good cause by the Requesting Party, the following categories of ESI need not be preserved:

1. Data stored in a backup system for the purpose of system recovery or information recovery, including but not limited to disaster recovery backup tapes, continuity of operations systems, and data or system mirrors or shadows.

2. Deleted, slack, fragmented, or other data only accessible by forensics.

3. Random access memory (RAM), temporary or cache files, including internet history, web browser cache, and cookie files, wherever located.

4. Data in metadata fields that are frequently updated automatically, such as last-opened dates. Well

5. Data stored in server, system or network logs.

6. Legacy systems that are no longer in use and that are not reasonably accessible.

7. Encrypted data/password protected files, where the key or password cannot be ascertained absent extraordinary efforts.

8. Data stored on photocopiers, scanners, and fax machines.

## IV.  ESI SEARCH

The parties will discuss search methodologies with the goal of limiting the scope of review for production, minimizing the need for motion practice, and facilitating production in accordance with the deadlines set by the Court or agreed upon by the parties. Agreement on a search

methodology does not relieve a party of its independent obligations under the Federal Rules of Civil Procedure to conduct a reasonable inquiry and produce all responsive documents of which it is aware and which it is does not object to producing.

    A.    **Search Terms.** Along with the list of custodians searched, the Producing Party will provide a list of search terms used to locate documents potentially responsive to Requests for Production of Documents. The parties will meet and confer regarding any additional terms proposed by the Requesting Party. The Producing Party shall respond to the Requesting Party's request for additional search terms within 21 days after receipt.

    B.    **Technology Assisted Review**. Prior to using predictive coding/technology-assisted-review for the purpose of identifying or culling the documents to be reviewed or produced, the Producing Party will notify the Requesting Party.

    C.    **No Responsiveness Presumption.** The fact that a document is captured by a search pursuant to this protocol does not mean that such document is responsive to a discovery request, relevant to this litigation or will be produced. Discovery requests and the parties' responses thereto shall govern the scope of documents to be produced, subject to the parties' objections and any agreements reached in the parties' meet-and-confer process.

**V.    ESI PRODUCTION – FORMAT**

The following provisions shall generally govern the production format for ESI and paper documents.

    A.    **Document Image Format.**

        1.    Paper Documents - Hard copy documents shall be produced in Group IV single-page TIFF format (black and white, 300 dpi).

2. Electronic Files (except native files) - Electronic documents shall be produced in Group IV single-page TIFF format (black and white, 300 dpi) in the first instance, with the exception of non-redacted Excel and PowerPoint; however, a Requesting Party may make a subsequent request for native format production pursuant to paragraph H below.

3. Native Files - Notwithstanding the foregoing provisions of this paragraph, the parties recognize that it may be appropriate for certain files to be produced in native file format in the first instance (e.g., Excel, Lotus 123, Power Point, Audio, or Video files); the parties therefore agree the Producing Party shall produce such files in native format pursuant to paragraph H below.

4. Electronic files, whether converted to images or produced in native shall be produced with the entire family files intact; appropriate Begin Family document ID and End Family document ID numbers shall be provided.

5. When a document is withheld for any reason and is part of a family of documents being produced, its absence should be designated with a placeholder image with a corresponding production number.

6. Tiffs shall be placed in an Images folder with any given subfolder not to exceed 5,000 images per folder and accompanied by an .opt placed in a Data folder.

The parties shall meet and confer to the extent reasonably necessary to facilitate the import and use of the produced materials with commercially available document management or litigation support software such as Relativity, Summation or Concordance.  Documents that present imaging

or formatting problems shall be promptly identified and the parties shall meet and confer to attempt to resolve the problems.

  B. **Document Unitization**. If hard copy documents are scanned into an electronic form, the unitization of the document and any attachments shall be maintained as it existed in the original when creating the image file. The relationship of documents in a document collection (e.g., cover letter and enclosures, e-mail and attachments, binder containing multiple documents, or other documents where a family relationship exists between the documents) shall be maintained throughout the scanning or conversion process.

  C. **Handling Completely Irrelevant, Non-Responsive Documents and Highly Confidential or Documents Containing Only Objected to Information Attached to Production-Eligible Documents and Objected to Information or Irrelevant, Non-responsive, Highly Confidential portions of Responsive Documents.**

    1. The Parties agree that a document that contains only information that a Party has objected to producing or is completely irrelevant, non-responsive, and highly confidential that is attached to an otherwise production-eligible document can be produced as a single-page Bates-stamped TIFF image slip-sheet containing text stating why the document has been withheld.

    2. When producing responsive attachments, the parent email will be produced, regardless of responsiveness or objection. However, that information that a Party has objected to producing or irrelevant, nonresponsive highly confidential text in such e-mails can be redacted.

    3. The Parties agree that that information that a Party has objected to producing or information that is irrelevant, non-responsive and highly

confidential that is a portion of a responsive document may be redacted. The redactions pursuant to this section shall be labeled with the following text: "Redacted – Irrelevant, Nonresponsive & Highly Confidential" or "Redacted – Objection" and placed on a log.

    a)    "Highly Confidential" in this paragraph are those documents that would be designated "Attorneys Eyes Only Information" pursuant to the Protective Order in this matter.

D. **Privileged Documents.**

    1.    Breaking family relationship - when a document is withheld for privilege and is part of a family of documents, its absence due to privilege should be designated with a slip-sheet with a corresponding production number.

    2.    Redacted items must be imaged and OCR'd after redaction, in order to provide searchable text.

    3.    If a native file needs to be redacted, it will be produced in redacted form as an imaged document.

E. **Color**. Documents containing color need not be originally produced in color. However, if an original document contains color necessary to understand the meaning or content of the documents, the Producing Party shall honor reasonable requests for either the production of an original document for inspection and copying or production of a color image of the document. The Producing Party shall then reproduce such Document(s) and/or ESI in color 24-bit JPEG format or native format.

F. **De-duplication**. To the extent that exact duplicate documents (based on MD5 or SHA-1 hash values at the document level) reside within a party's data set, each party is only

required to produce a single copy of a responsive document. This de-duping should be done only on exact duplicate documents. Only documents where the main document and the attachments are exactly the same will be considered duplicates. De-duplication done within and across custodians is acceptable as long as both parties have provided notification of same.

Electronic files stored on shared drives or other non-email locations will not be de-duplicated against email attachments of the same files.

G. **Email Threading**. The Parties may use analytics technology to identify email threads.

H. **Production Numbering**. Each page of a produced document shall have a legible, unique page identifier (Production Number) electronically "burned" onto the image at a location that does not unreasonably obliterate, conceal, or interfere with any information on the source document. No other legend or stamp will be placed on the document image other than a confidentiality legend (where applicable), redactions and the Production Number identified above. The confidential legend shall be "burned" onto the document's image at a location that does not unreasonably obliterate or obscure any information on the source document. For native file productions, the native file will be named by the Bates number followed by any confidentiality labeling and then placed in a folder labeled "Natives." An image placeholder will represent the native file and an accompanying text file will be used to load the document link to the native file into the litigation support software.

Each party will be assigned a unique identifying name.

1. Plaintiff will use its name as the prefix and 6 digits (i.e., "GPRE######") to identify all paper documents or imaged documents. (See above regarding native).

7

      2.      Defendant will use his name and 6 digits (i.e., "EH_######) to identify all paper documents or imaged documents.  (See above regarding native.)

  I.      **Native File Production**. [Please note that paragraphs 2-5 below also apply to the initial production of native files**.**]

      1.      The parties agree that after the initial production in TIFF, a party seeking production in Native format must demonstrate a particularized need for the production.

            a)      If any documents were initially produced in TIFF, and native production is subsequently agreed to, the party shall produce a cross reference table (in .csv format) that references the native documents to the originally produced TIFF documents, showing the native file extension and the TIFF document number.

            b)      The Requesting Party shall pay for the cost of this subsequent native production.

      2.      Native file production numbering.  For all documents produced in native format, each party will include its assigned name and 6 digits (i.e, NAME######) (see prepending above) and placed in a Natives folder.

      3.      For each document produced in native format, a HASH value shall be provided for each document and included with the production in the form of a cross-reference file (.csv, .dat or .txt) containing the metadata fields (see paragraph K).

        4.      If a file produced in native format is designated as "confidential," the Production Media on which this file is produced must be labeled appropriately.

        5.      For any file produced in native format that is entitled to be redacted pursuant to an agreement of the parties, applicable law or otherwise by order of the Court, the parties shall meet and confer with respect to suitable techniques and methods of redaction to preserve the integrity of the data while protecting information subject to privilege or other protections. If a file cannot be redacted prior to production, the parties shall agree to take such other steps as may be necessary.

    J.    **Production Media**. All productions shall be made by secure file transfer, such as Accellion. If a Receiving Party requires their production on CD-ROM, DVD, or external drive, it must notify the Producing Party in advance of the production. If a Producing Party cannot make a production via secure file transfer, it must likewise notify the Receiving Party in advance and accommodate an alternative requested media. The secure file transfer or other production media must identify: (1) the Producing Party's name; (2) the production range; (3) the production date; and (4) a statement of whether the file transfer or media contains information that is subject to a Protective Order or confidentiality designation. If the production is made via secure file transfer, it must also provide instructions for downloading the materials and the required timeframe for the download.

    K.    **Meta-Data, Searchable Text and Other Field information**. The Producing Party's extractions of the following metadata fields, will be accompanied by a load file to the Requesting Party:

1. Title for user files, if it exists;
2. Author for user files;
3. (Application/document) Date created for user files;
4. (Application/document) Last modified date for user files;
5. (Application/document) Last accessed for user files;
6. Date and time received for emails;
7. Date and time sent for emails;
8. Subject line for emails;
9. To, From, CC and BCC for emails;
10. File path;
11. File Name;
12. File size;
13. Hash (also identify which value used);
14. Application;
15. File extension; and
16. Conversation Index for emails, if it exists.

Producing parties will also produce the following additional information as described below with each production.

1. Starting Production (Beginning document Production number);

2. Ending Production (Ending document Production number);

3. Production Begin and End Attachment Numbers;

4. Confidentiality;

5. Custodian; and

6. Record Type.

The metadata listed above shall be labeled as such in the "loadable" file and produced on Production Media and shall be provided in a manner suitable for importing the information in a commercially available document management or litigation support software such as Relativity, Summation or Concordance (.csv, .dat or .txt) and placed in a Data folder.

1. Searchable Text/OCR - For the images generated from native electronic files, a Producing Party shall produce full text extracted from the electronic files, accompanied by a load file. For redacted documents, full text consisting of OCR will be provided. The .txt/OCR will be provided in document level, in a Fulltext folder, with the docid (beginning Bates number) and filepath location of the text provided in the .dat (located in the Data folder).

L. **Production of Other Electronic Documents**. This Order only applies to the production of the following categories of electronic documents: e-mails (and any associated attachments) and user files (word processing documents, spreadsheets and presentations.) The

parties shall meet and confer to agree on the form of any production of electronic documents other than the foregoing.

## VI. EXCEPTIONS TO PROTOCOL

If the forms of production allowed by this protocol present an undue burden or cost for a Producing Party, the parties shall meet and confer to agree on a reasonable, alternative form of production. Any party may file a motion to seek individual relief from this protocol.

## VII. PRIVILEGE LOGS

The Parties will provide a log as set forth below of all documents withheld due to privilege, work product protection, or other privilege consistent with Fed. R. Civ. P. 26. These logs should be produced within 60 days of the party's final production.

A. The Parties agree that the following privileged communications or documents need not be included in a privilege log: (a) work product of outside legal counsel; (b) any internal communications by a Party's outside law firm; and (c) any communication or document that post-dates the filing of the complaint.

B. In an effort to avoid unnecessary expense and burden, the Parties agree that, for documents redacted or withheld from production on the basis of attorney-client privilege, work product doctrine and/or any other applicable privilege, the Producing Party will prepare a summary metadata log containing, for each document claimed as privileged, an export of all or a subset of the metadata fields (as agreed upon by the Parties) to the extent such information exists and has not been suppressed or redacted for privilege. The export should include the following information from the top level/line email:

      1. DOCID (substitute BEGBATES and ENDBATES if the document was produced with redactions)

  2. FAMILYID (substitute BEGATTACH and ENDATTACH if the document was produced with redactions)

  3. CUSTODIAN

  4. FROM

  5. TO

  6. CC

  7. BCC

  8. SUBJECT (unless the subject line contains privileged information)

  9. DATESENT

  10. DATERCVD

  11. DATECREATED

  12. FILENAME

  13. AUTHOR

  14. FILEEXT

  15. PRIV_CLAIM (E.G., ATTORNEY-CLIENT, WORK PRODUCT)

  C. If the Requesting Party requires further information, it shall explain in writing the need for such information and identify, by Bates number or other unique identifier, each document for which it seeks this information. Within fourteen (14) days of such a request, the Producing Party must either (i) provide the requested information or (ii) challenge the request. If a Party challenges a request for further information, the Parties shall meet and confer to try to reach a mutually agreeable solution.

## VIII. COSTS OF PRODUCTION

In addition to those specific circumstances agreed to herein, the parties reserve the right to seek cost shifting as appropriate at a later time.

Dated this 21st day of February, 2024.

BY THE COURT:

s/ Susan M. Bazis
United States Magistrate Judge